**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

TRAVIS R. NORWOOD,

      Plaintiff,

v.                                     Case No. 2:20-cv-00350
                                          (Consolidated with
                                          Case No. 2:20-cv-00299)

BETSY JIVIDEN, *et al.*,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  This matter is proceeding on the plaintiff's Complaint (ECF No. 4). Pending before the court is a Motion to Dismiss filed by Scott Conrath and Keefe Commissary Network.  (ECF No. 27).

I.      *PLAINTIFF'S ALLEGATIONS AND RELEVANT PROCEDURAL HISTORY*

Plaintiff's complaint alleges a series of claims against various individuals and entities concerning his conditions of confinement at the Mount Olive Correctional Complex ("MOCC").  Among other defendants, Plaintiff has named Keefe Commissary Network ("Keefe"), the contracted commissary vendor for the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), and one of its employees, Scott Conrath ("Conrath").  The complaint does not specify Conrath's roles and responsibilities or even whether he works at MOCC or at Keefe's headquarters in Ohio.

Plaintiff's complaint alleges that the commissary is the only place that inmates can purchase things that are not provided by the WVDCR, including certain food items, hygiene items, and writing supplies (for non-indigent prisoners). (ECF No. 4 at 15, ¶¶ 46-48). Plaintiff claims that, on November 1, 2019, "Keefe drastically inflated the prices of commissary items," increasing some items by between 100% and 300%. (*Id*. at 17, ¶¶ 55, 56).

The complaint further alleges that Keefe has a duty to ensure that purchased commissary items are received by segregated inmates, like Plaintiff, who by WVDCR policy are only permitted delivery of commissary items once a week. (*Id*. at 16, ¶¶ 50-51). The complaint further alleges that Keefe "sublets" the responsibility for delivery of segregated inmates' commissary orders to WVDCR staff who, in turn, permit inmates to make the deliveries. Plaintiff contends that, in that process, items are lost or stolen. (*Id*. at 16, ¶ 52). Plaintiff specifically states that stamped envelopes are a common item that is lost or stolen, "leaving inmates unable to mail documents for up to nine (9) days." (*Id*.) Without any further specification, Plaintiff claims that he has had numerous commissary items lost or stolen and that no one takes responsibility for the loss of the items or reimbursement thereof. (*Id*., ¶ 53).

In Count One of the complaint, Plaintiff alleges that Conrath negligently failed to properly supervise and exercise control over Keefe, proximately causing injury to Plaintiff by failing to ensure that all commissary items for which he was charged were delivered.[1] (*Id*. at 21-22, ¶¶ 80-81). Count Two of the complaint appears to allege, in part, that Plaintiff's Eighth and Fourteenth Amendment rights were violated by Keefe by charging

---

[1] To the extent that Plaintiff's complaint also appears to be asserting claims on behalf of other inmates, as a non-lawyer, pro se litigant, he cannot do so. *Oxendine v. Williams*, 509 F.2d 1405 (4th Cir. 1975). Thus, the court will disregard those allegations.

him 69 cents for a stamped envelope. (*Id.* at 22, ¶ 85). Additionally, a liberal reading of Count Three of the complaint suggests that Plaintiff is claiming that Conrath and Keefe violated his First and Fourteenth Amendment rights[2] by denying him commissary items, including stamped envelopes, for which he was charged, but never received. Plaintiff further claims that this "prevented him from prevailing in his habeas corpus" and denied him "access to the courts." (*Id.* at 23, ¶¶ 86, 87). Plaintiff seeks declaratory relief and monetary damages from Conrath and Keefe. (*Id.* at 24-25).

## II.    *STANDARD OF REVIEW*

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods*

---

[2]  Plaintiff also contends that this conduct violated his Fifth Amendment rights. However, the Fifth Amendment Due Process Clause only applies to the conduct of federal officials. Thus, it is not applicable herein. *See Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 537 (4th Cir. 2022) ("The Fifth Amendment's Due Process Clause does not apply to municipalities, but only to federal actors).

*v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

### III.    DISCUSSION

### A.    Plaintiff's complaint fails to state a plausible negligence claim against Defendants Keefe and Conrath.

Count One of Plaintiff's complaint alleges that Keefe acted negligently in failing to ensure proper delivery of items Plaintiff has purchased from the commissary at MOCC. Count One further alleges that Conrath negligently failed to "supervise and exercise

control over" Keefe.  Keefe and Conrath (hereinafter "Defendants") assert that Plaintiff has not properly alleged that Conrath has any supervisory duties over Keefe and, at any rate, Plaintiff is essentially seeking to hold Conrath liable under a theory of "reverse *respondeat superior*," which is not permissible under the law.  (ECF No. 28 at 3). Defendants further assert that Keefe is not responsible for delivery of its commissary items and, thus, owes no duty to Plaintiff in that regard.  (*Id*. at 3-4).    Therefore, Defendants claim that they could not have proximately caused any injury to Plaintiff grounded in his failure to receive commissary items.  (*Id*. at 4).  Finally, Defendants claim that any damages Plaintiff suffered were *de minimis* and barred by the "economic loss doctrine." *See, e.g., Severn Peanut Co. v. Indus. Fumigant Co*., 807 F.3d 88, 94 (4th Cir. 2015) (the economic loss doctrine thus bars "recovery for purely economic loss in tort"); *Nagy v. FMC Butner*, 376 F.3d 252, 257 (4th Cir. 2004); *Aikens v. Debow*, 541 S.E.2d 576, 583-84 (W. Va. 2000) ("economic loss alone will not warrant recovery in the absence of some special relationship between the plaintiff and the tortfeasor.").  (*Id*.)

Plaintiff's response makes a blanket assertion that it would be premature to dismiss his complaint without permitting discovery and potential amendment thereof. (ECF No. 34 at 2).  However, his response fails to sufficiently address the deficiencies in his negligence claims against these Defendants.  Plaintiff takes issue with Defendants' assertion that Conrath has no duty to supervise other Keefe employees, yet he offers no facts to support that allegation.  (*Id*.)  His response focuses solely on the fact that envelopes and batteries he purchased from the commissary had been lost or stolen and his belief that Keefe is engaging in price gauging (which will be further addressed below). (*Id*. at 2-3).  Plaintiff's response further emphasizes the alleged indifference of WVDCR

staff to this problem[3] and wholly fails to address Defendants' assertion that they owe him no duty concerning the delivery of items to his cell. (*Id.*)[4]

Plaintiff's negligence claims against Keefe and Conrath are deficient as a matter of law and must be dismissed. As noted by Defendant, Plaintiff cannot impute liability to Conrath or any other Keefe employee for purported acts or omissions committed by their employer. Moreover, Plaintiff has acknowledged that WVDCR staff is actually responsible for delivery of commissary items. Therefore, Keefe cannot be charged with any breach of duty that proximately caused injury to Plaintiff resulting from the failure to receive such items, and the purely economic loss suffered therefrom appears to be no more than *de minimis*. Thus, any recovery under a negligence theory appears to be barred. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state any plausible negligence claim against Defendants Keefe and Conrath.

### B. The complaint fails to state any plausible federal constitutional claim against Keefe and Conrath.

Plaintiff's complaint further claims that Defendants' conduct violated his rights under the First, Eighth, and Fourteenth Amendments. The vehicle for such a claim is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

---

[3]  Plaintiff's claims against the WVDCR defendants named in his complaint will be separately addressed.

[4]  Plaintiff had filed several declarations in support of his complaint and in opposition to Defendants' motions to dismiss. (ECF Nos. 30, 36, and 40). These documents contain additional facts not set forth in Plaintiff's complaint, including facts concerning events that have allegedly occurred since the filing of the complaint. However, such documents are not properly considered at the motion to dismiss stage, which is focused solely on the sufficiency of the complaint itself, and the court may not consider the same without converting the motion to dismiss into a motion for summary judgment, which is not presently appropriate. Nor may such documents be properly considered to be amendments to the complaint, as Plaintiff has not sought and been granted leave to amend. Thus, this Court should decline to consider these documents at this stage of the proceedings. *See, e.g., Space Tech. Dev. Corp. v. Boeing Co.*, 209 F. App'x 236, 239 n.4 (4th Cir. 2006) (declining to consider declaration and exhibits not attached or incorporate into complaint).

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added]. Because of Keefe's contract with the WVDCR, the undersigned will presume, solely for the purpose of this motion to dismiss, that Keefe and its employees are state actors under § 1983.

Count Two of the complaint herein makes a blanket assertion that the various conditions of confinement about which Plaintiff complains deprived him of rights under the Eighth and Fourteenth Amendments, "including his right against cruel and unusual punishment." (ECF No. 4 at 22). In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.* at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

Additionally, in *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations.  Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."  13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).  In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3)    There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799.  However, in *Farmer*, *supra*, the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment.  Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive.  511 U.S. at 838.  As further noted in *Evans v. Chalmers*:

[T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead a supervisor can only be held liable for "his or her own misconduct."  [556 U.S. at 677.]

703 F.3d 636, 660-61 (4th Cir. 2013).  Thus, to hold a supervisory defendant liable, the plaintiff must allege facts that allow the court to draw a reasonable inference that the supervisor's own conduct permitted the constitutional violation to occur.  *Iqbal*, 556 U.S. at 677.  As an initial matter, as noted above, Plaintiff has not sufficiently alleged facts to demonstrate Conrath's supervisory role or any actual knowledge he had of a "pervasive and unreasonable risk of constitutional injury" to Plaintiff or his deliberate indifference thereto.  Nevertheless, the undersigned will address, in turn, each of the constitutional claims pled in Plaintiff's complaint and the parties' arguments concerning the same.

a.    Eighth Amendment claim.

First, the complaint contains no valid basis for an Eighth Amendment claim against Keefe and Conrath.  As asserted by Defendants, and acknowledged by Plaintiff, Keefe and Conrath are not involved in or responsible for Plaintiff's showers, medical needs, or other conditions of confinement in segregation at MOCC.  Their only role concerns contracted commissary sales at the prison.  At best, with respect to these

Defendants, Plaintiff appears to be alleging that charging 69 cents for an envelope is "cruel and unusual punishment." (ECF No. 4 at 22).

Thus, Plaintiff essentially seeks to hold Keefe and Conrath liable for "price gauging" by substantially increasing the cost of items available only in the commissary. (ECF No. 34 at 3). However, as noted by Defendants, the Constitution does not require that inmates be provided with retail outlets in prison, much less the right to commissary items at low prices. *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop."); *Harrison v. Federal Bureau of Prisons*, 611 F. Supp.2d 54, 62 (D.D.C. 2009) ("It is established that an inmate has no federal constitutional right to purchase items from a prison commissary."); *Hopkins v. Keefe Commissary Network Sales*, Civil Action No. 07-745, 2007 WL 2080480, at *5 (W.D. Pa. July 12, 2007); *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980) ("[T]here is simply no legal basis for a demand that inmates be offered items for purchase at or near cost."); *see also Armstrong v. Broadus*, No. 1:08-cv-225, 2009 WL 3805552, at *9 (S.D. Miss. Nov. 6, 2009); *Smith v. Shivers*, No. 09-cv-1027, 2009 WL 3379925, at *4 (W.D. La. Oct. 16, 2009); *Hopkins*, 2007 WL 2080480, at *5; *Pepper v. Carroll*, 423 F. Supp.2d 442, 449 (D. Del. 2006); *Trujillo v. Young*, No. 7:02-cv-01083, 2003 WL 23312781, at *3 (W.D. Va. June 5, 2003); *Boyd v. Nowack*, No. 09-cv-7639, 2010 WL 892995, at *4 (E.D. La. Mar. 11, 2010). (ECF No. 28 at 5-6). Nor has Plaintiff pled facts demonstrating that charging inflated prices constitutes a serious deprivation sufficient to meet the objective prong of the Eighth Amendment standard. *See, e.g., Starks v. Powers*, No. 03–1962, 2004 WL 1380530, at *1 (7th Cir. June 17, 2004) (noting that district court had dismissed a claim of commissary overpricing as frivolous); *Owens v. Dir. IDOC*, No. 16-cv-00457-MJR, 2016 WL 2957938, at *2 (S.D. Ill. May 23, 2016)

(overcharging for commissary items does not independently violate any constitutional right); *Allen v. Rednour,* No. 13-CV-00851-NJR, 2014 WL 3733871, at *6 (S.D. Ill. July 29, 2014) (same).  Thus, the undersigned proposes that the presiding District Judge **FIND** that, even assuming the facts stated in the complaint to be true, Keefe's charging of 69 cents for an envelope or otherwise inflating prices for other commissary items does not establish a plausible violation of Plaintiff's rights under the Eighth Amendment.

b.      Fourteenth Amendment due process claim.

Moreover, to the extent that Plaintiff may also be alleging that the loss of his purchased commissary items constitutes a deprivation of property giving rise to a Fourteenth Amendment due process violation, that claim also fails as a matter of law. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (emphasis omitted).

In addition to the internal administrative grievance procedures, which Plaintiff was required to exhaust before filing this lawsuit, West Virginia law authorizes civil tort causes of action to recover for personal property wrongfully withheld by another individual.  *See Goodman v. Ramey*, No. 2:12-cv-0439, 2012 WL 5966642, at *4 (S.D.W. Va. Nov. 29, 2012) (holding that an inmate failed to state a constitutional claim for the loss of his property when he could have challenged the taking "in a garden-variety tort claim in state court."); *see also Kidd v. Bradley*, 578 F. Supp. 275, 276-77 (N.D.W. Va. 1984).  State law also permits monetary recovery for lost or damaged personal property by filing a claim against state agencies with the Legislative Claims Commission.  *See* W. Va. Code §§ 14-2-1 *et seq.*  Plaintiff has not demonstrated that he attempted to take

advantage of any of these processes under state law and therefore he has not established that there is an absence of state processes under which he could attempt to recover for the loss of his property.  Consequently, the undersigned proposes that the presiding District Judge **FIND** that the complaint fails to state a plausible Fourteenth Amendment claim against Keefe and Conrath on this basis.

    c.  Denial of access to courts claim.

   Finally, to the extent that Plaintiff further claims that Keefe and Conrath also violated Plaintiff's right to access the courts under the First and Fourteenth Amendments, that claim also fails.  In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), the Supreme Court held that prisoners have a constitutional right to access the courts meaningfully and effectively.  However, this obligation is not all-encompassing and does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  In *Lewis*, the Court emphasized that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Id.* at 351; *see also Murphy v. Inmate Sys. Mgmt., Inc.*, No. 1:03-0170, 2008 WL 793631, at *10 (S.D.W. Va. Mar. 20, 2008) ("[P]risoners do not have a right per se to a law library or legal assistance.").

   The *Lewis* Court emphasized that "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  518 U.S. at 351.  The required tools are those needed by inmates "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their

confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

As noted by Defendants, however, "[t]o establish a violation of this right, a prisoner-Plaintiff must plead and prove that he has not been "provided an opportunity to litigate a claim challenging [his] sentence or conditions of confinement in a court of law." *White v. Kautzky*, 494 F.3d 677, 679-80 (8th Cir. 2007) (citing *Murray v. Giarratano*, 492 U.S. 1, 11 n.6 (1989) and *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). (ECF No. 28 at 6-7). Additionally, Plaintiff must show that he suffered an actual injury. *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993) (holding that a prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access"); *Weber v. Wood*, 986 F.2d 504 (8th Cir. 1993) ("an inmate must demonstrate that he suffered prejudice.")

To prove an actual injury, Plaintiff "must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Harsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) (quotations omitted). This court and others have frequently dismissed denial of access claims where a plaintiff has failed to establish an actual injury. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (recognizing that plaintiff bringing denial of access to courts claim must allege claim with specificity and identify an actual injury resulting from official conduct); *Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (rejecting denial of access claim where complaint did "not specifically explain how [plaintiff] was injured by any limitations on his access to the law library."). Here, Defendants contend that "Plaintiff has neither pled, nor offered facts sufficient to establish any such claim against either Conrath or Keefe." (ECF No. 28 at 7). The undersigned agrees.

13

Plaintiff makes a speculative and conclusory allegation that Defendants where somehow responsible for his failure to succeed with his state habeas corpus petition, which is insufficiently pled.  *See Strickler*, 989 F.2d at 1383 (vague, conclusory, and speculative allegations of potential success of habeas corpus petition do not establish the necessary "specific injury or prejudice to [] litigation.")  His response offers nothing more than another blanket statement that "where Plaintiff's stamped envelopes are bought at astronomically inflated prices and sometimes never received at all . . . [i]t <u>absolutely</u> impeded and hindered me in my court proceeding."  (ECF No. 34 at 4).  Yet, he fails to provide any specific facts to support these contentions.

With respect to these Defendants, at best, Plaintiff alleges a very general claim that he was denied some mailing envelopes during the time that his state habeas was pending. Plaintiff fails to allege that he was unable to mail a specific required filing to the court and that such failure resulted in the dismissal of his habeas petition for that reason. Therefore, he fails to establish any actual injury stemming from Defendants' conduct and, thus, fails to state any plausible violation of the First or Fourteenth Amendments on this basis.  Therefore, the undersigned proposes that the presiding District Judge **FIND** that Count Three of Plaintiff's complaint fails to state a plausible claim for relief against Keefe and Conrath.

### III.    RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by Defendants Keefe and Conrath (ECF No. 27), **DISMISS** Plaintiff's all of Plaintiff's claims against Defendants Keefe and Conrath for failure to state a claim upon which relief can be granted, and leave this matter referred to the undersigned United States Magistrate Judge for additional

proposed findings and recommendations concerning the claims against the other defendants.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.


August 5, 2022

Dwane L. Tinsley
United States Magistrate Judge

15